UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES P. BRUNET and
KEITH A. NAZWORTH,

    Plaintiffs,

vs.                                    Case No.: 3:07-cv-68-J-16MCR

THE UNITED STATES OF AMERICA,

    Defendant.
_____/

## ORDER

Plaintiffs sue pursuant to the Suits in Admiralty Act ("SAA"), 46 U.S.C. § 30901 *et seq.*, and contend that the United States Coast Guard (the "Coast Guard") negligently failed either to remove or mark as a safety hazard piers remaining from the demolished Fuller-Warren Bridge (the "Old Bridge"). (Dkt. 1, ¶ 39). Defendant, the United States of America ("Defendant" or "United States"), moves to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and argues that the United States enjoys sovereign immunity from suit (the "Motion to Dismiss"). (Dkt. 15). Plaintiffs initially moved to Abate Response to the Motion to Dismiss and to Conduct Limited Discovery on the Issues Raised (the "Motion to Abate"). (Dkt. 19). Subsequently, however, Plaintiffs filed a response to the Motion to Dismiss (the 'Response") (Dkt. 24) and Defendant filed a reply to the Response (the "Reply). (Dkt. 28). In light of Plaintiffs' Response to the Motion to Dismiss, the Motion to Abate (Dkt. 19) will be **DENIED as MOOT**. Nevertheless, the Court considers all of the

arguments raised by each motion and responsive filing. For the reasons that follow, the Motion to Dismiss (Dkt. 15) will be **GRANTED**.

## I. Procedural and Factual Background

This action arises from Plaintiffs' February 5, 2005, boating accident on the St. John's River. At the time of the accident, Plaintiffs, James B. Brunet and Keith Nazworth were county officers with the Jacksonville (the "City") Sheriffs Office. On February 5, 2005, Plaintiffs provided security on the St. John's River for City's Super Bowl events. Plaintiffs were severely injured when their police boat allided with a support pier that remained in the River after the Old Bridge's replacement.

In 1995, the Coast Guard granted the Florida Department of Transportation ("FDOT") a permit to replace the Old Bridge. The replacement required removal of the Old Bridge and construction of a new bridge (the "New Bridge"). The cover letter forwarded with the permit, stated that the Old Bridge bore the duty to comply with all lighting requirements for the New Bridge as found in 33 C.F.R. part 118. The permit required no temporary navigational lighting during the removal of the Old Bridge or the construction of the New Bridge. The Coast Guard did not conduct any inspection of the New Bridge to verify that the permit conditions were met. Due to delays in the removal of the Old Bridge, remnants including the subject piers remained in the St. John's River. (Dkt.1, ¶¶ 12-13). On February 5, 2005, Plaintiffs' boat struck one of the remaining piers, causing injury to Plaintiffs.

Plaintiffs filed three suits in Duval County, Florida (the "State Court Suits") arising from the February 5, 2005, accident. The State Court Suits,[1] which were consolidated for discovery purposes, are still pending. On January 1, 2007, Plaintiffs filed this suit in District Court alleging three counts: Count I (Negligence of the United States); Count II (Negligence

---

[1] The State Court Suits are: *Nazworth v. Balfour Beatty Constr., Inc. and Stat of Fla.*, Case No. 162006-CA-02034; *Brunet v. Balfour Beatty Constr., Inc. and Stat of Fla.*, Case No. 162006-CA-02033; and *Brunet/Nazworth v. Brunswick Comm'l & Gov't Prods., Inc.*, Case No. 2006-CA-006306.

of Brunswick); Count III (Strict Liability of Brunswick). On November 11, 2007, the parties filed a "Notice of Voluntary Dismissal" (Dkt. 30) informing the Court that Brunswick Commercial & Government Product, Inc. (referred to above and hereinafter as "Brunswick") should be dismissed from this case. Based on this notice both counts against only Brunswick are no longer before the Court. Before its dismissal, Brunswick filed a Motion to Dismiss (Dkt. 12). As Brunswick is no longer a party to this suit, its Motion to Dismiss (Dkt. 12) will be **DENIED AS MOOT**.

**II.    Discussion**

Although conceding that the SAA provides a limited waiver at sovereign immunity, Defendant argues that the discretionary function exception deprives this Court of subject matter jurisdiction. 46 U.S.C § 30903 (the SAA provides limited waiver of sovereign immunity). The Eleventh Circuit had held that the discretionary function exception, which is expressed in the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 2680(a), also applies to the limited waiver of sovereign immunity under the SAA. *See Mid-South Holding Co., Inc. v. United States*, 225 F.3d 1201, 1203-04 (11th Cir. 2000).

Plaintiffs claim that Defendant is not entitled to dismissal under the discretionary function exception "where a regulatory basis for the duty exists and where the Coast Guard negligently undertook otherwise voluntary efforts to warranty [sic] the safety of the obstruction left in the navigable waterway." (Dkt. 24 at p. 2). Further, Plaintiffs argue that the Motion to Dismiss should be reviewed under a Rule 56 standard and that they are entitled to conduct limited discovery as to disputed facts. Defendant counters that "none of these reasons make the discretionary function exception inapplicable and therefore, the United States has not waived sovereign immunity." (Dkt. 28 at p. 2). Further, Defendant claims that "Plaintiffs are in the possession of all available information regarding statutes, regulations and policies of the Coast Guard vis-à-vis bridge administration. There is no further discovery necessary for Plaintiffs to address the jurisdictional issue of whether Coast Guard statutes,

3

regulations or policies create a mandatory duty." (Dkt. 29 at p. 6).

### A.     Applicable Standard

The first question before the Court is whether the 12(b)(1) standard or the summary judgment standard should be used to resolve issues of subject matter jurisdiction. The choice of standard depends on whether the facts necessary to sustain jurisdiction implicate the merits of plaintiff's cause of action. The Eleventh Circuit has recognized that jurisdiction becomes intertwined with the merits of a cause of action when "a statute provides the basis of both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Garcia v. Copenhaver, Bell & Associates*, 104 F.3d 1256, 1262 (11th Cir. 1997) (*quoting Sun Valley Gasoline, Inc. v. Ernst Enters.*, 711 F.2d 138, 139-40 (9th Cir. 1983)).

In this case, jurisdiction is not so intertwined with the merits of Plaintiff's cause of action to warrant review of the Motion to Dismiss under a summary judgment standard. The Motion to Dismiss in this case challenges jurisdiction based on Defendant's status as a sovereign and not the elements of Plaintiffs' tort claim. Plaintiffs strain to transform an otherwise straightforward 12(b)(1) motion into a summary judgment motion largely based on, what the Court will refer to as, the "Undertaking Doctrine." Plaintiffs claim that Defendant's involvement in activities related to demolition of the Old Bridge created a duty to perform these actions; therefore, it abrogated any discretion which may have existed. (Dkt. 28 at p. 5). However, as will be demonstrated below, the discretionary function exception is jurisdictional while the "Undertaking Doctrine" goes to the merits. The Court need not reach the merits of this case if the jurisdictional question is decided against Plaintiffs.

### B.     Sovereign Immunity

The FTCA waives the sovereign immunity of the United States for certain torts committed by government employees where a claim would exist under state law if the government were a private party. 28 U.S.C. § 1346. However, the discretionary function

4

exception limits the federal government's waiver of sovereign immunity. 28 U.S.C. § 2680 (a). The discretionary function exception reads, in pertinent part, that a plaintiff may not bring a tort claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* The purpose of this exception is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)).

The Supreme Court has developed a two-part test to determine whether the discretionary function exception bars a particular tort claim. *Gaubert*, 499 U.S. at 324-25. First, the challenged conduct must involve an element of judgment. *Miles v. Naval Aviation Museum Found., Inc.*, 289 F.3d 715, 720 (11th Cir. 2002) (citing to *Gaubert*, 499 U.S. 315 (1991); GATX/Airlog *Co. v. United States*, 286 F.3d 1168, 1173-74 (9th Cir. 2002). The exception will not apply if a court determines that a statute or regulation "specifically prescribes a course of action for an employee to follow." *Miles*, 289 F.3d at 721.

Second, a court must decide "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322. "The focus is on the nature of the actions taken and on whether they are susceptible to policy analysis. The decision need not actually be grounded in policy considerations so long as it is, by nature, susceptible to policy analysis." *See GATX,* 286 F.3d at 1174 (internal quotations and citations omitted). The judgment under review need not include "the actual weighing of policy considerations." Further, review is not limited to judgments made at the policy or planning level but includes day-to-day management and operations decisions. *OSI, Inc. v. United States*, 285 F.3d 947, 950 (11th Cir. 2002).

The defendant bears the burden of proving that the discretionary function exception

5

applies. *GATX*, 286 F.3d at 1174. If applicable, it bars federal courts from exercising jurisdiction over the subject matter. *LeSoeur v. United States*, 21 F.3d 965, 967 (9th Cir. 1994).

Plaintiffs concede that supervision of Coast Guard issued bridge permits is a discretionary function. However, Plaintiffs contend that the discretionary function exception is inapplicable because statutes and regulations prescribe a course of action for an employee to follow. Specifically, Plaintiffs cite to 33 C.F.R. § 118.40(d) and 33 C.F.R. § 118.65(a) and (b) for the proposition that the Coast Guard had a regulatory obligation to prescribe temporary lighting. In addition, Plaintiffs cite to Section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403, which prohibits the creation of any obstruction "not affirmatively authorized by Congress."

**33 C.F.R. § 118.40(d) and 118.65(a) and (b)**

Plaintiffs claim that 33 C.F.R. § 118.40(d), a regulation promulgated by the government, obligates the Coast Guard to ensure that the Bridge was properly lit and marked. (Dkt. 28 at p. 2). That regulation reads in pertinent part, "[w]hile a bridge is under construction, the District Commander prescribes the temporary lights and other signals to be displayed for the protection of navigation." Defendant argues that "[t]his subpart of § 118.40 imposes no mandatory duty on the Coast Guard; rather, it is an allocation of responsibility to the District Commander for the discretionary authority in the remainder of § 118.40." Pursuant to the FTCA, even though a statute or regulation imposes a duty on a government official the discretionary function exception applies unless the regulation dictates specific action. *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998).

Plaintiffs argue that 33 C.F.R. § 118.65(a) and (b) requires lights on fixed bridges. Those regulations read, in pertinent part:

> (a) each fixed bridge span over a navigable channel shall be lighted
> . . .

6

> (b) when the navigable channel extends from pier to pier or when piers are located within the navigable channel, each end of such piers shall be lighted with red light.

However, as Defendant states, Part 118 applies to "[a]ll persons owning or operating bridges over the navigable waters of the United States." 33 C.F.R. § 118.1. Accordingly, because the Bridge was owned by the State of Florida and not by the United States, the State of Florida not the United States Government bore the duty to maintain all necessary lights. (Dkt. 28 at p. 3).

**Section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403**

Plaintiffs claim that, although this statute generally applies to the initial construction of structures in navigable water, the statute can be violated "where a structure not initially an obstruction to navigation becomes one because of improper maintenance." (Dkt. 24 at p. 5, citing to *Pelican Marine Carriers v. City of Tampa*, 791 F. Supp 845, 853 (M.D. Fla. 1992)). Plaintiffs claim that under Section 403, the law recognizes a duty not to create or allow obstructions to navigation and this duty is also breached where a structure that was not initially an obstruction becomes one due to improper maintenance. Plaintiffs rely on *Central Rivers Towing, Inc. v. City of Beardstown*, 750 F.2d 565, 570 (C.A. Ill. 1984), for this proposition. Plaintiffs claim that the "clear intent" of Section 10 is to "permit the existence of a bridge that obstructs navigable waters only for as long as it remains vital for transportation. Because an abandoned bridge in navigable waters is no longer a bridge, but an obstruction under [the] Rivers and Harbors Act, it is incumbent on the Coast Guard to ensure its timely removal." (Dkt. 24 at p. 6).

Plaintiffs point to no case law for the proposition that the Rivers and Harbors Act creates a duty on the part of the United States. Defendant also notes that:

> All bridges are considered obstructions to navigation. *See* 33 C.F.R. § 116.01. Therefore, Plaintiffs' argument that the piers suddenly became an obstruction when the roadway was removed is without merit. From 1950 until the present the Bridge existed pursuant to congressional authorization; therefore, even if the United States could be liable for violation of the Rivers and Harbors Act, it would not [be liable] because

7

>  the Bridge was properly permitted.

(Dkt. 28 at p. 4).

Although *Central Rivers Towing* also involves a boating accident, this is where any similarity to the present case ends. In *Central Rivers Towing* a barge allied with a submerged obstruction, which the Coast Guard had marked previously with a floating buoy. The buoy was missing prior to the allision. There was conflicting testimony regarding whether that missing buoy had been reported to the Coast Guard. The *Central Rivers Towing* court concluded that the missing buoy had been reported prior to the barge alliding with the submerged obstruction.

In this case, it is not disputed that the obstruction was above water, highly visible and the Coast Guard had taken no action to mark the obstruction. Plaintiffs themselves characterize the pier as "a deteriorated, monolithic, monstrosity centered in the middle of a navigable span . . . at the time of the allision, it was half-demolished, stained, weathered and crumbling with spikes of rebar steel rods sticking out. There were large chunks of cement missing from the structure and [it] served no purpose to mankind." (Dkt. 24 at p. 9).

The Court finds that the regulations and statutes cited by Plaintiffs do not specifically prescribe a course of action for an employee to follow. Here, the challenged conduct involves an element of judgment or choice. Under the second part of the *Gaubert* test, the Court must "look to the nature of the challenged decisions[s] in an objective or general sense, and ask whether th[ose] decision[s] are ones I would expect inherently to be grounded in considerations of policy." *Cochran v. United* States, 38 F.Supp.2d 986, 991 (N.D. Fla. 1998) (citing to *Autery v. United* States, 992 F.2d 1523, 1530 (11th Cir. 1993). Defendant informs the Court that:

>  Plaintiffs do not challenge the United States' policy analysis under the second prong of the *Gaubert* test. It goes without saying that policy considerations are present whenever the Coast Guard decided to allocate its finite resources given the myriad of regulatory obligations Congress has granted to it . . . . Therefore as shown above no mandatory statute, regulation or policy exists and the Coast Guard's determination as to

8

>how to inspect and regulate bridges along with the marking of obstructions to navigation, either directly or indirectly, necessarily implicate policy determinations. Thus, making this case subject the discretionary function exception and outside of the Court's subject matter jurisdiction.

(Dkt. 28 at p. 7).

The Court agrees with Defendant's above cited assessment. Based on the Court's finding that it lacks jurisdiction, it need not consider Plaintiffs' "Undertaking Doctrine" argument in any depth. However briefly, Plaintiffs argue that the discretionary function exception does not shield the government in instances "where [its] agents voluntarily undertake an otherwise discretionary or voluntarily assumed task and then negligently performs it." (Dkt. 24 at p. 6). Specifically, Plaintiffs contend that under the Supreme Court's logic in *Indian Towing Co. v. United* States, 350 U.S. 61 (1955), the Coast Guard may be held liable when it negligently performs a voluntarily assumed task. Plaintiffs base this argument on the fact that Coast Guard officials represented in a June 19, 2002, letter that they, "'reevaluated' conditions under the bridge and then rendered opinions to the contractor that portions of the demolished bridge piers were not hazardous to boaters. Thus, there is a dispute as to what truly discretionary measures were actually undertaken by the Coast Guard before rendering this opinion." (Dkt. 19 at p. 2).

Even if the Court were to consider Plaintiffs' "Undertaking Doctrine" argument, it is clear that "since *Gaubert* it has been generally recognized, including by the Eleventh Circuit, that *Indian Towing* is not persuasive authority in the context of the discretionary function exception." (Dkt. 28 at pp. 5-6).

## IV. Conclusion

Defendant's actions are susceptible to a policy analysis and therefore fall within the discretionary function exception. Defendant is therefore immune from suit in this action. Accordingly, and in summary, it is **ORDERED** that:

1. Brunswick's Motion to Dismiss (Dkt. 12) is **DENIED as MOOT**.

9

2. Defendant's Motion to Dismiss (Dkt. 15) is **GRANTED; and,**

3. Plaintiffs' Motion to Abate (Dkt. 19) is **DENIED**.

The Clerk is directed to enter judgment in favor of Defendant and **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida on this 23rd day of January 2008.

_____
JOHN H. MOORE II
United States District Judge

Copies to:    Counsel of Record

10